IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ZANE GRAYSON CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:15–cv–00358 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| UNITED PARCEL SERVICE, INC., ) | United States District Judge |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

In this employment case, plaintiff Zane Caldwell, proceeding *pro se*, sues his former employer, defendant United Parcel Service, Inc., for wrongful discharge. In his civil cover sheet and complaint, he appears to claim that his discharge violated Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*; and the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.* In a subsequently filed document, he seems to claim that his discharge also violated the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq*.

UPS now moves to dismiss Caldwell's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the court will grant UPS's motion and dismiss Caldwell's complaint. The court will, however, grant Caldwell leave to file an amended complaint alleging FMLA and ADA claims.

I.  BACKGROUND

In December 2013, Caldwell was working at UPS. (Dkt. No. 2 at 4, Compl.)[1]  Though he had a knee injury at the time, he was assigned to load trucks. (*Id.* at 4.)  Because of the injury and other health problems, including the flu, Caldwell missed work from December 8 through December 12. (*Id.*; Dkt. No. 9-1 at 3, EEOC Charge of Discrimination.)  On each day, he texted his supervisor, Cody, telling him that he was going to be out. (Dkt. No. 2 at 4; Dkt. No. 9-1 at 3.)  But Cody apparently did not relay the messages to management. (Dkt. No. 9-1 at 3.)  So UPS discharged Caldwell on December 16 for failure to notify the company of his absences. (Dkt. No. 2 at 4.)

Roughly four months later, on April 30, 2014, Caldwell filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission. (Dkt. No. 9-1 at 1, 3.)  In his charge, he claimed that UPS had denied him a reasonable accommodation and discharged him in violation of the ADA. (*Id.*)  He alleged as follows:

> I began employment on July 23, 1993, as a Sorter.  In 2006, I sustained a work related injury.  Thereafter, I asked my employer to provide reasonable accommodation.  My multiple requests went unanswered for years.  I even asked whether I could use a walking cane, but that was also denied.  From December 8 thru 12, 2013, I was out of work due to multiple health problems, including the flu.  On December 8, 9, 10, 11, and 12, 2013, I sent text messages to Cody, Supervisor[,] but he did not respond.  I also sent a text to Gary Evans, Manager.  My Supervisor, Cody failed to pass on the messages to management.  I provided a copy of telephone records outlining the text messages sent and received from my number.  On December 16, 2013, I was discharged.
>
> I believe I was denied reasonable accommodation and discharged, in violation of the Americans with Disabilities Act of 1990, as amended.

---

[1] Unless otherwise noted, the facts recited in this section and relied upon below are derived from Caldwell's complaint and documents integral to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Consistent with the governing standards of review under Rules 12(b)(1) and (b)(6), the court must accept Caldwell's factual allegations as true and construe them in the light most favorable to Caldwell. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

2
Case 7:15-cv-00358-EKD-RSB   Document 25   Filed 10/20/15   Page 2 of 13   Pageid#: 94

(*Id.* at 3.)

After the EEOC took no action on his charge and issued a notice of right to sue, Caldwell filed this action against UPS on June 30, 2015. (Dkt. No. 2 at 1–2.) On his civil cover sheet, he checks the FMLA box in the "Nature of Suit" section, but he also writes that he is bringing the action under the "Equal Employment Opportunities Act, 42 USC 2000e et seq" in the "Cause of Action" section. (Dkt. No. 2-1 at 1, Civil Cover Sheet.)

For his complaint, Caldwell uses a preprinted form titled "Form to Be Used by Plaintiffs in Filing a Complaint Under the Equal Employment Opportunities Act, 42 USC 2000e *et seq.*" (Dkt. No. 2 at 1.) In answer to the form's questions, Caldwell states that he was unlawfully discharged from his employment on December 16, 2013, that the EEOC took no action on his charge, and that he is filing the action within 90 days of receiving a right-to-sue notice from the Commission. (Dkt. 2 at 1–5.) But he does not state when he filed his charge with the EEOC or attach a copy of the charge to the complaint. (*Id.* at 1.)

In response to the question about the reason UPS gave for his discharge, Caldwell states as follows: "No call[.] No show[.] The[y] said failure to notify. [I] have records for the dates they said [I] failed to notify[,] but [sent] Cody Supervisor phone text where I notified him provided by US Cellular records." (*Id.* at 4.) Caldwell goes on to state, however, that UPS really fired him for a different reason: "The[y] were mad because I got hurt during [the] busy season [and] was going to be out for [a] few days up to [a] week[,] and they had me loading trucks." (*Id.*)

Caldwell also states in answer to the form's questions that UPS has a grievance procedure and that he filed a grievance with the company over his discharge. (*Id.*) The grievance was

3

Case 7:15-cv-00358-EKD-RSB   Document 25   Filed 10/20/15   Page 3 of 13   Pageid#: 95

denied. (*Id.*) Caldwell further states that he has worked since his discharge. (*Id.* at 5.) He got a job working for FedEx doing a "400 piece pull for trucks to be loaded by drivers." (*Id.*)

For relief, Caldwell requests his job back and compensation for "mental damages." (*Id.* at 5.) But he does not state the amount of damages that he is seeking. (*Id.*)

UPS responded to Caldwell's complaint by filing this motion to dismiss under Rules 12(b)(1) and (b)(6). (Dkt. No. 8 at 1, Def.'s Mot. to Dismiss.) For its motion under Rule 12(b)(1), UPS argues that the court lacks subject-matter jurisdiction over Caldwell's Title VII claim because Caldwell failed to exhaust his administrative remedies for that claim by filing an EEOC charge alleging a Title VII violation. (Dkt. No. 9 at 6–7, Def.'s Mem. in Supp. of Mot. to Dismiss.) And for its motion under Rule 12(b)(6), UPS contends that Caldwell fails to allege sufficient facts to state a plausible FMLA claim. (*Id.* at 8–9.)

In opposition to UPS's motion, Caldwell first filed a motion titled "Motion for Case to Be Heard by the Court," to which he attached a collection of documents under the caption "Evidence A." (Dkt. No. 11 at 1–3, Pl.'s Mot. for Hr'g.)[2] The documents appear to be the exhibits that Caldwell's union submitted in support of his grievance with UPS. (Dkt. No. 11-1 at 1–10.)

Several weeks later, Caldwell filed two more documents, each titled "Supporting Facts." (Dkt. No. 20 at 1, Pl.'s Sept. 3, 2015 Filing; Dkt. No. 21 at 1, Pl.'s Sept. 8, 2015 Filing.) In the first document, he states that "[t]his case violates the American with Disabilities Act . . . which may put it in [a] different jurisdiction." (Dkt. No. 20 at 1.) Attached to the document are two letters from the EEOC dated April 3, 2014, and April 21, 2014, respectively. (Dkt. Nos. 20-1,

---

[2] The court heard oral argument on UPS's motion to dismiss and so Caldwell's "Motion for Case to Be Heard" is now moot. The court will thus deny it as such. But to the extent that the documents attached to the motion were intended to be a response in opposition to UPS's motion to dismiss, the court will consider them in ruling on that motion.

4

20-2.)  In the second document, Caldwell states that he has a torn meniscus muscle in his left knee from an injury that he sustained while working for UPS and that he notified the company's human-resources department about the injury.  (Dkt. No. 21 at 2.)

UPS filed a response to these documents, construing them together as a motion for leave to file an amended complaint.  (Dkt. No. 23 at 1–3, Def.'s Resp. to Pl.'s Sept. 2015 Filings.)  It contends that the court should deny the motion on futility grounds.  (*Id.* at 2.)  In UPS's view, amendment would be futile because Caldwell made no mention of the meniscus injury as a basis for this discharge in his EEOC charge, and because he fails to allege sufficient facts to state a plausible wrongful-discharge claim under the ADA.  (*Id.* at 2–3.)

## II.  DISCUSSION

### A.  UPS's Rule 12(b)(1) Motion to Dismiss

#### *(1) Standard of Review*

A motion to dismiss under Rule 12(b)(1) tests the court's subject-matter jurisdiction over a plaintiff's claim.  The plaintiff bears the burden of establishing that subject-matter jurisdiction exists.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  In deciding a Rule 12(b)(1) motion, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).  It must, however, "view[] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)."  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a

5

matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R*, 945 F.2d at 768).

### *(2) The court lacks subject-matter jurisdiction over Caldwell's Title VII claim.*

Title VII makes it unlawful "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Before bringing a Title VII claim in federal court, a plaintiff must exhaust his administrative remedies by timely filing a charge of discrimination with the EEOC. *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014). The plaintiff's failure to take this step "deprives the federal courts of subject matter jurisdiction over the claim." *Id.* (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)).

In this case, Caldwell filed an EEOC charge claiming that UPS violated the ADA—not Title VII. And at oral argument, he stated that he does not think that UPS discriminated against him based on his race, color, religion, sex, or national origin. So while he used a preprinted form for a Title VII claim as his complaint, it does not appear that he is trying to assert such a claim here. Even if he is attempting to do so, the court plainly lacks subject-matter jurisdiction over the claim because he failed to exhaust his administrative remedies. Accordingly, to the extent that Caldwell is trying to make a Title VII claim, the court will grant UPS's motion and dismiss that claim with prejudice.

### B. UPS's Rule 12(b)(6) Motion to Dismiss

### *(1) Standard of Review*

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a plaintiff's complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To avoid dismissal, the "complaint must establish

'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Basically, a plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether a plaintiff has met this plausibility standard, the court must take as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards*, 178 F.3d at 244, but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

When, as here, the plaintiff is without counsel, he is held to "less stringent standards," and the court must construe his complaint "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court is not, however, "expected to construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Nor is it required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Id.*

### (2) Consideration of Extrinsic Documents

"If, on a motion under Rule 12(b)(6) . . . , matters outside of the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Federal Rule of Civil Procedure] 56." Fed. R. Civ. P. 12(d). This rule is not absolute, however. "A court may consider official public records, documents central to plaintiff's claim, and

documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006).

Here, Caldwell has filed numerous documents in support of his complaint or in opposition to UPS's motion to dismiss. With the exception of the U.S. Cellular records, none of the documents are explicitly referred to in his complaint. But some are implicitly referred to—namely, the exhibits from his grievance with UPS over his discharge and the letters from the EEOC. UPS does not dispute the authenticity of these documents. Indeed, it accepts them as true for purposes of its motion. (Dkt. No. 18 at 2 n.1, Def.'s Resp. to Pl.'s Mot. for Hr'g.) The court will thus consider the documents, though they make no difference in its resolution of UPS's motion.

The court will likewise consider the EEOC charge attached to UPS's motion because it is central to Caldwell's claims, and because it is explicitly referred to in his complaint. But the court will not consider Caldwell's two documents titled "Supporting Facts," which raise for the first time the ADA and the tear in the meniscus muscle in his left knee. *See S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

### *(3) Caldwell does not state plausible FMLA claims.*

Under the FMLA, an "eligible employee" is entitled to take leave "[b]ecause of a serious health condition that makes [him] unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D). An "eligible employee" is an employee who has been employed "for at least 12 months by the employer" and "for at least 1,250 hours of service with such employer during the previous 12-month period." *Id.* § 2611(2)(A). And a "serious health condition" is "an illness,

8
Case 7:15-cv-00358-EKD-RSB   Document 25   Filed 10/20/15   Page 8 of 13   Pageid#: 100

injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility; or . . . continuing treatment by a health care provider." *Id.* § 2611(11).

The FMLA provides two types of protection to employees. *Yashenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 546 (4th Cir. 2006). First, an employer cannot "interfere with, restrain, or deny" an employee's "exercise of or [his] attempt to exercise" any right provided under the Act. 29 U.S.C. § 2615(a)(1). Second, an employer cannot retaliate against an employee by discharging him or "in any other manner discriminat[ing] against [him] for opposing any practice made unlawful" under the Act. *Id.* § 2615(a)(2).

Here, it is unclear whether Caldwell is attempting to allege an interference or a retaliation claim, or both. The court will thus address both.

### a. Interference Claim

To state a plausible claim for interference with an entitlement to FMLA benefits, a plaintiff must allege sufficient facts to show (1) that he was an eligible employee under the Act; (2) that his employer was covered by the Act; (3) that he was entitled to leave under the Act; (4) that he gave his employer adequate notice of his intention to take leave; and (5) that the employer denied him benefits that he was entitled to under the Act. *Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 617 (W.D. Va. 2014).

In this case, Caldwell does not allege sufficient facts to establish each of these elements. He alleges only that he notified his supervisor that he was going to miss work, that "[t]he[y] were mad" that he "got hurt during [the] busy season and was going to be out for [a] few days up to [a] week," and that he "had [a] knee injury that was a factor." (Dkt. No. 2 at 4.) Even construing these allegations liberally, they are not enough to show that Caldwell was an eligible employee

9

under the FMLA, that he suffered a serious health condition, or that UPS denied him benefits that he was entitled to under the Act. The court thus concludes that Caldwell fails to state a plausible interference claim.

### b. Retaliation Claim

To state a plausible retaliation claim under the FMLA, a plaintiff must allege sufficient facts to show (1) that he engaged in protected activity under the Act; (2) that his employer took adverse action against him; and (3) that a causal connection existed between his protected activity and his employer's adverse action. *Yashenko*, 446 F.3d at 551.

Here, Caldwell fails to allege sufficient facts to establish all of these elements. As just discussed, he does not allege enough facts to show that he was an eligible employee under the FMLA or that he was entitled to leave under the Act. So, *a fortiori*, he does not allege sufficient facts to establish that he was engaged in protected activity under the FMLA. *See Osei v. Coastal Int'l Security, Inc.*, 69 F. Supp. 3d 566, 569 (E.D. Va. 2014) ("One must be an 'eligble employee' entitled to FMLA's protections to engage in protected activity." (citing *Adams v. High Purity Sys. Inc.*, No. 1:09–cv–354, 2009 U.S. Dist. LEXIS 8079 *7–8 (E.D. Va. July 2, 2009), *aff'd*, 382 F. App'x 269 (4th Cir. 2010))). The court therefore concludes that Caldwell fails to state a plausible retaliation claim.

\* \* \*

Because Caldwell's complaint does not state either a plausible interference or retaliation claim, the court will grant UPS's motion and dismiss his FMLA claim or claims. The court will, however, grant Caldwell leave to file an amended complaint because it is possible that he could allege enough facts to state one or both claims. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) ("Amendment should be refused only if it appears to a certainty that plaintiff

cannot state a claim." (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 360–67 (2d ed. 1990)).

### *(4) Caldwell could state plausible ADA claims.*

Caldwell makes no reference to the ADA in his civil cover sheet or complaint, and so, like UPS, the court construes his "Supporting Facts" documents—which raise the Act for the first time—jointly as a motion for leave to file an amended complaint. But unlike UPS, the court does not think amendment would be futile given the record as it now exists.

As noted above, Caldwell makes two ADA claims in his EEOC charge—failure to accommodate and wrongful discharge. (Dkt. No. 9-1 at 3.) It is not clear whether he seeks to add one or both claims to his complaint. UPS challenges only an amendment to add a wrongful-discharge claim on futility grounds. (Dkt. No. 23 at 2–3.) The court will thus grant Caldwell leave to add a failure-to-accommodate claim, should he be so inclined.

UPS advances two arguments for why an amendment to add a wrongful-discharge claim would be futile. (*Id.*) It first contends that such an amendment would be futile because Caldwell "made no mention of his meniscus injury as a basis for his ADA wrongful discharge claim (as opposed to his failure to accommodate claim) in his EEOC charge." (*Id.* at 2.) Consequently, UPS submits, he "failed to exhaust his administrative remedies" as to that claim. (*Id.*)

To be sure, Caldwell's EEOC charge does not expressly state the tear in the meniscus muscle of his left knee as a basis for his discharge. But exactness is not the standard for preserving a judicial claim for discrimination under the ADA. The Fourth Circuit has made clear that "the administrative charge 'does not strictly limit' the ensuing lawsuit." *Jones v. Southpeak Interactive Corp.*, 777 F.3d 658, 669 (4th Cir. 2015) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). "Instead, so long as 'a plaintiff's claims in [his] judicial

11
Case 7:15-cv-00358-EKD-RSB    Document 25    Filed 10/20/15    Page 11 of 13    Pageid#: 103

complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation,' [he] 'may advance such claims in [his] subsequent civil suit." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).

Here, Caldwell's allegations of a knee injury and torn meniscus muscle in his complaint and "Supporting Facts" may be reasonably related to, and might be expected to follow from an administrative investigation of, his EEOC charge, in which he alleged that he "sustained a work related injury" in 2006, that he asked to use a cane after suffering the injury, and that he was unable to work from December 8 through December 12, 2013, because of "multiple health problems." (Dkt. No. 9-1 at 3.) So the court cannot agree with UPS at this time that Caldwell's wrongful-discharge claim would be barred for failure to exhaust his administrative remedies. The claim may or may not be barred depending upon the allegations made in any amended complaint.

UPS further contends that an amendment to add a wrongful-discharge claim would be futile because Caldwell fails to allege sufficient facts to state such a claim. To state a wrongful-discharge claim, a plaintiff must allege enough facts to show (1) that he is within the ADA's protected class; (2) that he was discharged; (3) that, at the time of his discharge, he was performing the job at a level that satisfied his employer's legitimate expectations; and (4) that his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012).

The court agrees with UPS that Caldwell's "Supporting Facts" documents here fail to allege sufficient facts to satisfy each of these elements. But it does not agree that it would be impossible for Caldwell to allege enough facts to do so. *See Ostrzenski*, 177 F.3d 245 at 252–53.

12
Case 7:15-cv-00358-EKD-RSB   Document 25   Filed 10/20/15   Page 12 of 13   Pageid#: 104

Accordingly, the court will grant Caldwell leave to file an amended complaint alleging both a failure-to-accommodate and a wrongful-discharge claim under the ADA.

III. CONCLUSION

For the foregoing reasons, the court will grant UPS's motion to dismiss and dismiss Caldwell's complaint, but it will grant Caldwell leave to file an amended complaint alleging FMLA and ADA claims.

An appropriate order will follow.

Entered: October 20, 2015.

*Elizabeth K. Dillon*
United States District Judge