CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

May 2, 2016

JULIA C. DUDLEY, CLERK
BY: A. Melvin
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ZANE GRAYSON CALDWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:15-cv-00358 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| UNITED PARCEL SERVICE, INC., | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Zane Caldwell, proceeding *pro se*, sues his former employer, defendant United Parcel Service, Inc. (UPS). The court dismissed Caldwell's original complaint on UPS's motion, but granted him leave to amend. In his amended complaint, Caldwell asserts claims for failure to accommodate and wrongful discharge under the Americans with Disabilities Act (ADA or Act), 42 U.S.C. § 12101 *et seq*.

UPS now moves again to dismiss. It argues that Caldwell's amended complaint fails to state a claim upon which relief can be granted, and so it must be dismissed under Federal Rule of Civil Procedure 12(b)(6). The court agrees. It will thus grant UPS's motion and dismiss Caldwell's amended complaint.

I. BACKGROUND

In December 2013, Caldwell was working at UPS. (Compl. ¶¶ A, H(3), Dkt. No. 2.)[1] Despite a knee injury, he was assigned to load trucks. (*Id.* ¶¶ H(3)–(6).) Because of the injury and other health problems, including the flu, Caldwell missed work from December 8 through

---

[1] In his amended complaint, Caldwell fails to set out most of the background facts included in his original complaint. This omission appears to be inadvertent, the result of Caldwell's *pro se* status. The court therefore takes the facts from both of Caldwell's complaints and from documents integral to them. And for purposes of UPS's motion, the court accepts all well-pleaded facts as true, construing them most favorably to Caldwell. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010).

December 12. (*Id.* ¶ H(3); EEOC Charge of Discrimination 3, Dkt. No. 9-1.) On each day, he texted his supervisor, Cody, telling him that he was going to be out. (*Id.* ¶ H(3); EEOC Charge 3; Am. Compl. ¶ 4, Dkt. No. 27; Am. Compl. Ex. B, Dkt. No. 27-3.) But Cody apparently did not relay the messages to management. UPS discharged Caldwell on December 16 for failure to notify the company of his absences. (Compl. ¶ H(3); Am. Compl. ¶ 9; EEOC Charge 3.)

Roughly four months later, on April 30, 2014, Caldwell filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission. (EEOC Charge 1.)[2] In his charge, he claimed that UPS had denied him a reasonable accommodation and discharged him in violation of the ADA. (*Id.*) He alleged as follows:

> I began employment on July 23, 1993, as a Sorter. In 2006, I sustained a work related injury. Thereafter, I asked my employer to provide reasonable accommodation. My multiple requests went unanswered for years. I even asked whether I could use a walking cane, but that was also denied. From December 8 thru 12, 2013, I was out of work due to multiple health problems, including the flu. On December 8, 9, 10, 11, and 12, 2013, I sent text messages to Cody, Supervisor[,] but he did not respond. I also sent a text to Gary Evans, Manager. My Supervisor, Cody failed to pass on the messages to management. I provided a copy of telephone records outlining the text messages sent and received from my number. On December 16, 2013, I was discharged.
>
> I believe I was denied reasonable accommodation and discharged, in violation of the Americans with Disabilities Act of 1990, as amended.

(*Id.* at 3.)

After the EEOC took no action on his charge and issued a notice of right to sue, Caldwell filed this action against UPS on June 30, 2015. (Compl. ¶ D.) On his civil cover sheet, he checked the Family and Medical Leave Act (FMLA) box in the "Nature of Suit" section, but he

---

[2] Caldwell did not attach a copy of the charge to his original complaint and does not attach one to his amended complaint. UPS, however, attached a copy to its motion to dismiss Caldwell's original complaint. Because the charge is integral to Caldwell's amended complaint (*see* Am. Compl. ¶ 2; Am. Compl. Ex. A, Dkt. No. 27-2), and because UPS does not challenge its authenticity, the court will consider it here. *See Earl v. Norfolk State Univ.*, No. 2:13-cv-148, 2014 U.S. Dist. LEXIS 88652, at *5 n.3 (E.D. Va. June 26, 2014) (considering an EEOC charge on the defendants' Rule 12(b)(6) motion even though it was not attached to the plaintiff's complaint).

2

also wrote that he was bringing the action under the "Equal Employment Opportunities Act, 42 USC 2000e et seq" in the "Cause of Action" section. (Civil Cover Sheet 1, Dkt. No. 2-1.) For his original complaint, he used a preprinted form titled "Form to Be Used by Plaintiffs in Filing a Complaint Under the Equal Employment Opportunities Act, 42 USC 2000e *et seq*." In answer to the form's questions, he stated that he was unlawfully discharged from his employment on December 16, 2013, that the EEOC took no action on his charge, and that he was filing the action within 90 days of receiving a right-to-sue notice from the Commission. (*Id*. ¶¶ A, C–H.)

In response to the question about the reason UPS gave for his discharge, Caldwell stated: "No call[.] No show[.] [T]hey said failure to notify. [I] have . . . records for the dates they said [I] failed to notify[,] but [sent] Cody Supervisor phone text where I notified him provided by US Cellular records." (*Id*. ¶ H(3).) According to Caldwell, however, UPS really fired him "because [he] got hurt during [the] busy season [and] was going to be out for [a] few days up to [a] week[,] and they had [him] loading trucks." (*Id*.)

Caldwell also stated in answer to the form's questions that UPS has a grievance procedure and that he filed a grievance with the company over his discharge. (*Id*. ¶¶ H(4)–(5).) The grievance was denied. (*Id*.) Caldwell further stated that he has worked since his discharge. (*Id*. ¶ H(7).) He got a job working for FedEx doing a "400 piece pull for trucks to be loaded by drivers." (*Id*.)

On UPS's motion, the court dismissed Caldwell's original complaint, concluding (among other things) that it failed to state a claim upon which relief could be granted. (Mem. Op. 10–11, Dkt. No. 25.) The court, however, granted Caldwell leave to file an amended complaint alleging any FMLA or ADA claim. (Order ¶¶ 6–7, Dkt. No. 26.) He has filed an amended complaint

3

asserting two ADA claims—failure to accommodate and wrongful discharge. (Am. Compl. ¶¶ 9, 12.)

As to his failure-to-accommodate claim, Caldwell alleges that after tearing the meniscus in one of his knees, he asked for and received FMLA leave from UPS in April 2010. (*Id.* ¶ 11.) He further asserts that he "went to human resources and ask[ed] if [he] could bring a cane in and the answer was no." (*Id.* ¶ 5) He also claims that he "asked to be moved to other work areas numerous . . . times," but "was denied while lesser sen[i]ority people got the opportunity." (*Id.* ¶ 6.) Consequently, he "believe[s]" that UPS "denied [him] reasonable accommodation relief." (*Id.* ¶ 12.)

And as to his wrongful-discharge claim, Caldwell alleges that he followed UPS's call-in procedures for each of his absences by texting Cody that he "was going to be out due to injury of [his] Achilles tendon." (*Id.* ¶ 4.) Caldwell further alleges that his job performance was never an issue during his 20 years with the company. (*Id.* ¶ 7.) He thus "feel[s]" that UPS "took retalia[tory] action against [him] on [his] termination." (*Id.* ¶ 9.)

For relief, Caldwell seeks reinstatement with seniority, "insurance back on" him and his children, automatic withdrawal of child-support payments, and "a year's salary at [his] current pay level." (*Id.* at 3.)

In response to Caldwell's amended complaint, UPS filed this motion to dismiss under Rule 12(b)(6). (Def.'s Mot. to Dismiss Am. Compl. 1, Dkt. No. 32.) It first argues that Caldwell's claims fail at the outset because he does not allege sufficient facts to show that he suffers from a disability within the meaning of ADA. (Def.'s Br. in Supp. of Mot. to Dismiss Am. Compl. 6–8, Dkt. No. 33.) UPS also contends that even if Caldwell is disabled under the

4

ADA, he fails to allege enough facts to establish the necessary elements of either a failure-to-accommodate or wrongful-discharge claim. (*Id.* at 8–11.)

Neither party requested a hearing on UPS's motion, and so the court determines the motion without one. W.D. Va. Civ. R. 11(b).

## II. DISCUSSION

**A. Standard of Review**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a plaintiff's complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Basically, a plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether a plaintiff has met this plausibility standard, the court must take as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards*, 178 F.3d at 244, but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). If there is a conflict between the bare allegations of the complaint and any incorporated or attached document, then the document prevails. *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

When, as here, the plaintiff is without counsel, he is held to "less stringent standards," and the court must construe his complaint "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the court is not "expected to construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Nor is it required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Id.*

**B. Consideration of Extrinsic Documents and Facts**

A few days after filing his amended complaint, Caldwell filed a document titled "Attachment," to which he attached two exhibits from his grievance proceeding with UPS. (Attach. 1, Dkt. No. 30.) The first is the grievance form he filed with his union (Attach. Ex. 1, at 1, Dkt. No. 30-1), and the second is a note from his doctor saying that he could return to work on December 15, 2013 (*id.* at 2).[3]

The court will take these documents into account in deciding UPS's motion. While, generally, a court should not consider documents outside of the complaint on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), it "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed," *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006). Here, both the grievance form and the doctor's note are central to Caldwell's claims: they directly relate to his alleged disability or wrongful termination. UPS, moreover, does not dispute the authenticity of either document. (Def.'s Mem. 4 n.3.) Indeed, it relies on the doctor's note to support its contention that Caldwell does not have a disability for purposes of the ADA. (*Id.* at 7.)

---

[3] Caldwell filed these same documents in response to UPS's motion to dismiss his original complaint, and the court considered them in determining that motion. (Mem. Op. 8.)

In his two responses to UPS's motion, Caldwell alleges a handful of new facts concerning the alleged plot to terminate him. (Pl.'s First Obj. to Def.'s Mot. to Dismiss Am. Compl. 1–2, Dkt. No. 34; Pl.'s Second Obj. to Def.'s Mot. to Dismiss Am. Compl. 1, Dkt. No. 36.) The court will not consider those facts in determining the motion; for "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013).[4]

### C. Caldwell fails to state either a failure-to-accommodate or wrongful-discharge claim under the ADA.

The ADA prohibits a covered employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To make out any claim under the ADA, a plaintiff must first show that he suffers from a disability. The Act defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

In 2008, Congress amended the ADA "in order to expand the category of individuals who fall within its ambit." *Young v. UPS*, 784 F.3d 192, 198 n.7 (4th Cir. 2013) (citing ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.) Under the current regulations, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from

---

[4] In any event, the facts do little, if anything, to bolster Caldwell's ADA claims. And so even if the court were to consider them in deciding UPS's motion, it would still reach the same result.

7

Case 7:15-cv-00358-EKD-RSB   Document 38   Filed 05/02/16   Page 7 of 10   Pageid#: 176

performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability . . . ." 29 C.F.R. § 1630.2(j)(ii).

Here, Caldwell fails to allege enough facts to meet even this relaxed standard. He alleges that he suffered three injuries during his employment with UPS—an unspecified work-related injury in 2006, a knee injury in April 2010, and an Achilles-tendon injury in (presumably) December 2013. He does not, however, allege how long those injuries lasted or what (if any) major life activities they limited. Rather, he simply alleges that he missed some time from work and that, at some unspecified time, he asked if he "could bring a cane in" and "be moved to other work areas." And it is entirely unclear when he made those requests. His EEOC charge suggests that he could have made them as far back as 2006—seven years before his discharge in December 2013.

Further, the doctor's note that Caldwell has produced in support of his claims implies that all injuries had fully healed by the time he was discharged. In that note, the doctor (technically, a physician assistant) states that Caldwell "was seen on 12-13-13" and that "[h]e may return to work on 12-15-13." (Attach. Ex. 1, at 2.) The doctor makes no mention of any injury, much less any limitation on any major life activity or any need for an accommodation. (*See id.*)

Before the 2008 amendments to the ADA, a medical condition temporary in duration was usually not considered a disability within the meaning of the Act. *See, e.g.*, *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 468 (4th Cir. 2002) ("[A] temporary impairment . . . will generally not qualify as a disability under the ADA."), *superseded by statute*, 122 Stat. 3553, Pub. L. No. 110-325 § 2(a)(8), *as recognized in Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 573 (4th Cir. 2015). Now, though, such a condition may be considered a disability for purposes

of the ADA, but it must be "episodic" or "in remission" and "limit a major life activity when active." 42 U.S.C. § 12102(4)(D); *see also* 29 C.F.R. § 1630.2(j)(1)(vii).

In this case, Caldwell does not allege a medical condition that is episodic or in remission. Instead, he alleges what appear to be three separate injuries that have been temporary, one-time issues that resolved in a matter of days or weeks with no long-term or permanent effect. None of these injuries, then, qualifies as a disability under the ADA. "The ADA," as the Fourth Circuit has explained, "simply was not designed to protect individuals with broken bones, sprained joints, sore muscles, infectious diseases, or other ailments that temporarily limit an individual's ability to work." *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 200 (4th Cir. 1997), *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999).

In sum, Caldwell does not allege enough facts to show a disability within the meaning of the ADA, even under the permissive standard established by the 2008 amendments to the Act. The court therefore concludes that he fails to state either a failure-to-accommodate or wrongful-discharge claim under the ADA.[5]

## III. CONCLUSION

For the foregoing reasons, the court will grant UPS's motion and dismiss Caldwell's amended complaint. The dismissal is without prejudice as to Caldwell's right to file a formal motion seeking leave to file a second amended complaint. If he decides to file such a motion, it must be filed no later than May 16, 2016, and it must be accompanied by a supporting brief with the proposed second amended complaint attached as an exhibit.

---

[5] Because the court concludes that Caldwell does not allege a disability for purposes of the ADA, it need not address the remaining elements of his failure-to-accommodate and wrongful-discharge claims. Nevertheless, it notes that the failure to plead a disability under the ADA is not the only deficiency in his amended complaint.

An appropriate order will follow.

Entered: May 2, 2016.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge