CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 10 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ZANE GRAYSON CALDWELL, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:15-cv-00358 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| UNITED PARCEL SERVICE, INC., | ) United States District Judge |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Zane Caldwell, proceeding *pro se*, moves for leave to file a second amended complaint against his former employer, defendant United Parcel Service, Inc. (UPS). For the following reasons, the court will deny the motion as futile and dismiss the case with prejudice.

I. BACKGROUND

The background facts of this case are provided in detail in the court's two previous memorandum opinions on UPS's motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). (Dkt. Nos. 25 and 38.) Here, the court offers only those facts necessary to decide Caldwell's motion.

In December 2013, Caldwell loaded trucks for UPS. Because of various health problems, including the flu, he missed work from December 8 through December 12. On each day, he texted his supervisor, Cody, telling him that he was going to be out. But Cody did not inform \management, and Caldwell was discharged on December 16 for failure to notify the company of his absences.

Approximately four months later, on April 30, 2014, Caldwell filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), alleging that

UPS had denied him a reasonable accommodation and discharged him in violation of the Americans with Disabilities Act (ADA) of 1990 (42 U.S.C. § 12101 *et seq.*). The EEOC took no action on the charge and issued a right-to-sue letter. Caldwell then filed this case against UPS on June 30, 2015.

In his original complaint, Caldwell appeared to allege that he was wrongfully discharged in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) and the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. § 2601 *et seq.*), but not the ADA. (Dkt. No. 1.) On UPS's motion to dismiss under Rules 12(b)(1) and (b)(6), the court dismissed Caldwell's complaint, in part for lack of subject-matter jurisdiction and in part for failure to state a claim. (Dkt. No. 2 at 6–10.) But it gave Caldwell leave to file an amended complaint limited to claims under the FMLA and the ADA. (*Id.* 10–13.)

Caldwell filed an amended complaint alleging only two ADA claims—failure to accommodate and wrongful discharge. (Dkt. No. 27.) UPS again moved to dismiss under Rule 12(b)(6), and the court again dismissed Caldwell's complaint, concluding that it did not state either a failure-to-accommodate or wrongful-discharge claim, because it did not allege sufficient facts to establish a disability under the ADA. (Dkt. No. 38 at 7–9.) The court did not give Caldwell leave to file a second amended complaint, but it did not foreclose the possibility of such leave either. (*Id.* at 9.) Rather, it instructed Caldwell that if he wished to file a second amended complaint, then he needed to file a formal motion seeking leave to do so on or before May 16, 2016. (*Id.*)

Three days before the deadline, on May 13, Caldwell filed a document entitled "formal motion," in which he asked for leave to file a second amended complaint and for a 30-day extension "to allow [him] proper time to get [the] second amended complaint filed with

2

exhibits." (Dkt. No. 41 at 1.) The court granted the extension, but again instructed Caldwell "to file a brief explaining why it should grant him leave to file a second amended complaint at the same time that he files the proposed second amended complaint (and any supporting documents)." (Dkt. No. 43.)

Over the next month, Caldwell filed three more documents—"Amended Second Complaint" (Dkt. No. 41-1), "2nd Amendment Attachment" (Dkt. No. 42), and "Amende [sic] Second Complaint" (Dkt. No. 44). He did not, however, file a brief explaining why leave should be granted.

UPS opposes Caldwell's motion on two grounds. (Dkt. No. 45 at 4–8.) First, it contends that the motion should be denied because Caldwell failed to file a supporting brief. (*Id.* at 4.) And second, it argues that the motion should be denied because amendment would be futile. (*Id.* at 4–8.)

Neither party requested an oral hearing on Caldwell's motion, and the court does not believe that one would be helpful. Hence, the court decides the motion without an oral hearing. *See* W.D. Va. Civ. R. 11(b).

## II. DISCUSSION

As a preliminary matter, the court must decide whether to reach the merits of Caldwell's motion even though he did not comply with its instruction to file a supporting brief. While *pro se* parties are not excused from following the rules and orders of the court, they are not held to the same standards as attorneys. Indeed, they are afforded wide latitude. Here, the court does not believe that Caldwell intended to flout its instruction to file a supporting brief. Instead, it thinks that he simply did not understand what was required of him. In his interactions with the court, Caldwell has been courteous and respectful. Moreover, he has complied with all other

3

instructions given by the court. Accordingly, the court addresses the merits of Caldwell's motion below.

**A. Standard of Review for Motion to Amend Complaint**

A plaintiff may amend his complaint one time as a matter of right before the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). But once the defendant has filed such a pleading, the plaintiff may amend his complaint only by leave of the district court or by written consent of the defendant. Fed. R. Civ. P. 15(a)(2). A district court, though, "should freely give leave when justice so requires." *Id.* This liberal standard "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957), and *Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999)).

Generally, then, a district court will permit a plaintiff to amend his complaint upon granting a motion to dismiss under Rule 12(b)(6). *Ostrzenski*, 177 F.3d at 252–53. But it need not do so when an amendment would be prejudicial to the defendant, the plaintiff has acted in bad faith, or the amendment would be futile. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). "[A] district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse 'to grant the leave without any justifying reason.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As noted above, UPS opposes Caldwell's motion on the ground that amendment would be futile. The court therefore considers only that ground in deciding whether to grant Caldwell leave.

### B. Caldwell's Proposed Amendment Would Be Futile.

An amendment is considered futile if the amended complaint could not survive a motion to dismiss under Rule 12(b)(6). *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). A Rule 12(b)(6) motion challenges the legal sufficiency of a plaintiff's complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Essentially, a plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether a plaintiff has met this plausibility standard, the court must take as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards*, 178 F.3d at 244, but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). If there is a conflict between the bare allegations of the complaint and any incorporated or attached document, then the document prevails. *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

When, as here, the plaintiff is without counsel, he is held to "less stringent standards," and the court must construe his complaint "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the court is not "expected to construct full blown claims from sentence fragments."

5

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Nor is it required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Id.*

As noted earlier, Caldwell has filed two documents purporting to be a second amended complaint and one purporting to be an attachment to a second amended complaint. Two of these documents include exhibits. In light of Caldwell's *pro se* status, the court construes all the documents and exhibits together as his proposed second amended complaint, and reads them liberally, as it must.

Unfortunately, it has become increasingly more difficult for the court to discern Caldwell's claims with each iteration of his complaint. In his original complaint, he appeared to be alleging Title VII and FMLA claims. And in his amended complaint, he appeared to be alleging ADA claims. But in his proposed second amended complaint, it is far less clear what claims he is making. One document suggests that he is alleging claims under the FMLA, and another document suggests that he is alleging claims under the ADA. No document, however, sets out his claims in any orderly or logical fashion. Consequently, giving Caldwell every break it can, the court considers whether his proposed second amended complaint states any plausible claim under the FMLA or the ADA, or both.

### 1. *Caldwell's Proposed Second Amended Complaint Fails to State a Plausible FMLA Claim.*

On UPS's first motion to dismiss, the court concluded that Caldwell's original complaint failed to state either a plausible interference or retaliation claim under the FMLA, because it did not allege sufficient facts to establish that he was an eligible employee, that he suffered from a serious health condition, that he was denied leave, or that he was discouraged from or terminated for seeking or taking leave. (Dkt. No. 25 at 8–10.) Caldwell does not allege any new facts in his

6

proposed second amended complaint that remedy these deficiencies. Indeed, if anything, the complaint is less specific than his original complaint.

To be sure, Caldwell references the FMLA in the proposed second amended complaint. He alleges that he "went and sought medical treatment that was on 12/15/13 which FMLA states," and that "[e]ven under FMLA I went [and] sought medical treatment." (Dkt. No. 44 at 1–2.) But neither of these allegations, nor any other allegations in the complaint, establishes what his original complaint did not—that he was an eligible employee, that he suffered from a serious health condition, that he was denied leave, or that he was discouraged from or terminated for seeking or taking leave. *See Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (setting out the elements of an FMLA interference claim); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550–51 (4th Cir. 2006) (setting out the elements of an FMLA retaliation claim).

What is more, one of Caldwell's own exhibits suggests that he was not suffering from a serious medical condition when he was terminated. That exhibit is a doctor's note from mid-December 2013. (Dkt. No. 44-3.) It states, in relevant part, that Caldwell was seen by a physician assistant on December 13 and that Caldwell "may return to work/school on 12/15/13"—the day *before* he was terminated by UPS for failing to notify the company of his absences. (*Id.*)

Accordingly, the court concludes that, like the original complaint, the proposed second amended complaint fails to state a plausible claim under the FMLA.

### 2. *Caldwell's Proposed Second Amended Complaint Fails to State a Plausible ADA Claim.*

On UPS's second motion to dismiss, the court concluded that Caldwell's amended complaint failed to state either a plausible failure-to-accommodate or wrongful-discharge claim

7

under the ADA, because it did not allege sufficient facts to establish that he suffered from a disability within the meaning of the Act. (Dkt. No. 38 at 9.) Rather, the court thought that the complaint alleged nothing more than temporary, one-time injuries that had "resolved within a matter of days or weeks with no long-term or permanent effect." (*Id.*)

Caldwell does not allege any new facts in his proposed second amended complaint that fix this deficiency. The only new allegation that he makes with respect to the nature of his injuries is that he "do[es] have an injury that [sic] more than a day or week or month." (Dkt. No. 44 at 2.) To support this allegation, he references a medical record that he has produced as one of his exhibits. (*Id.*) That record appears to provide the results from a CT scan conducted on Caldwell's abdomen and pelvis on November 15, 2013. (Dkt. No. 41-1 at 8.) Among other things, it states:

> Lower lumbar degenerative disc disease and facet arthrosis. No destructive osseous lesions.
>
> Bilateral femoral head cam deformities an os acetabull with mild hip osteoarthrosis.
>
> . . . .
>
> No acute abnormality or specific findings to explain the patient's left lower abdominal pain. No evidence of diverticulitis or pelvic abscess.

(*Id.*)

Even assuming that these findings establish that Caldwell had an injury lasting "more than a day or week or month" on November 15, 2013, they do not show that he had such an injury when he was terminated more than a month later. Indeed, the medical record closest in time to his termination—the doctor's note from mid-December 2013—implies that he had no injury when he was terminated. (Dkt. No. 44-3.) That record, again, states that he "may return to work/school on 12/15/13." (*Id.*) Moreover, it makes no mention of any injury, let alone any

8

Case 7:15-cv-00358-EKD-RSB   Document 46   Filed 08/10/16   Page 8 of 10   Pageid#: 224

under the ADA, because it did not allege sufficient facts to establish that he suffered from a disability within the meaning of the Act. (Dkt. No. 38 at 9.) Rather, the court thought that the complaint alleged nothing more than temporary, one-time injuries that had "resolved within a matter of days or weeks with no long-term or permanent effect." (*Id.*)

Caldwell does not allege any new facts in his proposed second amended complaint that fix this deficiency. The only new allegation that he makes with respect to the nature of his injuries is that he "do[es] have an injury that [sic] more than a day or week or month." (Dkt. No. 44 at 2.) To support this allegation, he references a medical record that he has produced as one of his exhibits. (*Id.*) That record appears to provide the results from a CT scan conducted on Caldwell's abdomen and pelvis on November 15, 2013. (Dkt. No. 41-1 at 8.) Among other things, it states:

> Lower lumbar degenerative disc disease and facet arthrosis. No destructive osseous lesions.
>
> Bilateral femoral head cam deformities an os acetabull with mild hip osteoarthrosis.
>
> . . . .
>
> No acute abnormality or specific findings to explain the patient's left lower abdominal pain. No evidence of diverticulitis or pelvic abscess.

(*Id.*)

Even assuming that these findings establish that Caldwell had an injury lasting "more than a day or week or month" on November 15, 2013, they do not show that he had such an injury when he was terminated more than a month later. Indeed, the medical record closest in time to his termination—the doctor's note from mid-December 2013—implies that he had no injury when he was terminated. (Dkt. No. 44-3.) That record, again, states that he "may return to work/school on 12/15/13." (*Id.*) Moreover, it makes no mention of any injury, let alone any

limitation on any major life activity or any need for an accommodation. (*Id.*) And while the medical record from November 15, 2013, does note that Caldwell has degenerative-disc disease and facet arthrosis, he does not allege that these conditions constitute a disability or that UPS knew of them at the time of his termination.

But even if Caldwell's new allegation in the proposed second amended complaint is sufficient to show a disability within the meaning of the ADA and that UPS was aware of that disability when he was terminated, the other allegations in the complaint are not enough to make out all the remaining elements of a failure-to-accommodate or wrongful-discharge claim under the Act. They do not establish, for instance, that with a reasonable accommodation from UPS, he could perform the essential functions of his job; or that at the time of his termination, he was performing his job at a level that satisfied UPS's legitimate expectations. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (setting out the elements of an ADA failure-to-accommodate claim); *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (setting out the elements of an ADA wrongful-discharge claim).

The court thus concludes that, like the amended complaint, the proposed second amended complaint fails to state a plausible claim under the ADA.

* * *

Since Caldwell's proposed second amended complaint fails to state either a plausible FMLA or ADA claim, it would not survive a motion to dismiss under Rule 12(b)(6). The court thus holds that amendment would be futile.

### III. CONCLUSION

For the foregoing reasons, the court will deny Caldwell's motion and dismiss the case with prejudice.

9

An appropriate order will follow.

Entered: August 10, 2016.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge